21-2309 Omar Mohamed v. Merrick B. Garland. Mr. Bergman, when you are ready, you may proceed. Thank you, your honors. Good morning and may it please the court. My name is Andrew Bergman and I represent the petitioner Omar Mohamed in this immigration case that comes to the court on a petition for review of the Board of Immigration Appeals. Your honor, the Board of Immigration Appeals made three reversible errors in this case. First, they failed to apply their own waiver requirements to the Department of Homeland Security. Second, they misapplied the requirements for obligating an corroborating evidence. And then third, they misinterpreted the internal relocation requirements applicable in withholding of removal cases. Regarding the first issue, the waiver issue, your honors, it is undisputed that DHS failed to contest Mr. Mohamed's claim for withholding of removal on the basis of religion until its second appeal before the BIA. This failure amounted to a waiver of that issue because Mr. Mohamed applied for, he submitted evidence for, and he was granted relief on that claim in 2007 by the immigration court. Counselor, let me interrupt. I know you all talk about this as waiver and you have very good briefing on it. Does any kind of law of a case doctrine apply in the BIA or administrative law or is that purely in judicial courts? I'm not certain whether law of the case applies. I'm not aware of like... Right. Proceed with your argument. No one briefed it, but I wondered. Go ahead. Understood, your honor. So the point I was making is that by not contesting this issue in the immigration court and in its first appeal before the BIA, the DHS effectively waived it. They appealed as a BIA on other grounds. Did your client press that issue, the religion ground, during the initial proceedings before the IJ Olmensen? And if not, does the government have to respond to something that's not developed? Your honor, he did press that issue before the first IJ Olmensen in the original hearing before the immigration court in 2017. And he submitted evidence from five eyewitnesses, including himself, regarding that issue before the original IJ. And the original IJ's decision, which was issued in December 2017, specifically granted relief on the religion-based claim. When DHS appealed that decision to the BIA in late 2017, early 2018, they did not address the religion-based claim at all. They appealed on other grounds. And did you raise waiver then before the BIA? After the first decision by the IJ Olmensen? Your honor, waiver was not raised in the first appeal. However... So have you preserved that then? I think we have, your honor. It was raised in other briefing before the Board of Immigration Appeals in the subsequent appeals to it. And with regards to exhaustion and preservation of an issue before an administrative agency, you only have to put the issue before the agency such that it has the opportunity to correct whatever the issue was. And that's plainly what happened here in briefing before the Board of Immigration Appeals. Your honors, importantly, the BIA's waiver requirements, they're set out in a long line of the BIA's decisions. And I don't think that the government's even disputing that waiver applies in BIA proceedings. But importantly, it's not like a discretionary requirement. Indeed, federal courts, including this court, have described the BIA's waiver requirement as a quote-unquote procedural bar that prevents review of issues that have been waived that were not raised below. So here, basically, the BIA just failed to enforce that procedural bar because, as explained, DHS failed to contest an issue throughout more than a year's worth of proceedings before the Immigration Court and the BIA. Petitioner, I would ask on this issue respectfully that the court correct that error by vacating the decision from the BIA and requiring that they reinstate the prior decision from the Immigration Court granting withholding of removal on the religion claim. Are you sure we have authority to do the last part of that, reinstate the IJ's 2018 order granting removal? Are you sure we have that authority? Your Honor, I mean, I don't have, you know, chapter and verse that I can cite in a particular case where this specific thing happened. However, what the court does have authority to do is to vacate the order, the final removal order that was issued by the Board of Immigration Appeals. Federal appellate courts do that all the time. And what the instructions, you know, as to what the law is and how to correct the error that was committed by... Proceed with your argument. I noticed that in your brief. I didn't see any authority for it. Go ahead. Understood, Your Honor. Mr. Bergman, I'd like to go back to the first IJ Olmanson. You said it was clear that she relied on religion. But as I read it, it seemed to me that it was clear she relied on the social group of Somalis who create a video. But then she went on to say that potentially also could be a religious aspect to the creation of such a video being unacceptable in the Muslim faith. And that would be another basis. I'm not sure that's a clear holding. And it's clear that she's relying on the religious aspects such that the Well, Your Honor, I think that it is a clear holding, but it's an alternative holding, right? So we recognize that the first immigration judge was granting relief on other basis as well, and that the religion-based claim was an alternative decision to those. And so you don't want to include the word doesn't change the fact that it's still a finding that there's threats of persecution on the basis of religion. You know, it's unclear whether, you know, that's like there's particular language that the IJ has to use in order to make that finding. But, okay, well, let me ask you about another one in parallel to Judge Grunter. I think the conclusion is in it is more likely than not that Al-Shabaab would harm him based on one or any or all of those reasons. I'm quoting that. Now, what's your spin on that? I'm sorry. I didn't mean to be disrespectful. What's your argument about that? No, I understand, Your Honor. I think that, you know, when the immigration judge is granting relief, you know, I'll say that this isn't the first immigration judge decision was an oral decision. And so what we have is a transcript. And, you know, when she's issuing the ruling, she's just making them from the bench. And, you know, I think that when the judge says that she's granting relief on, you know, one or any or all of these bases, I think there's enough there to conclude that the ruling was made. And I think there's certainly enough there to put DHS on notice that relief was granted on this basis. And if they want to take that up to the Board of Immigration Appeals, they have to do so. I would also say that there were two decisions by the immigration judge that granted Mr. Mohammed relief on this basis. And, you know, despite those two decisions, the second one coming after the first remand from the BIA, there was no effort by the DHS to contest that issue until their second BIA appeal. So it's not just the one decision, it's the two. But because my time is running out, I do want to get to the other issues, Your Honor. Importantly, if the court reverses on the first point, we don't think they have to, we wouldn't think you have to reach issues two and three. But I will discuss them because I do think they're important as well. Regarding the corroboration issue, in our briefing, Petitioner offered three reasons for why the BIA's corroboration analysis was wrong. The government, I understand, has only actually responded to two of those reasons. I'm not sure if there's still a dispute as to the others, but the one reason that they did dispute the lack of notice regarding corroboration, I think the issue here is pretty simple. There is some notice that's required to be given to an applicant for relief from removal, and that's established by federal court precedents. And I don't think the government's disputing that that is a requirement. But here there's no notice that was given, and the only instances of notice that were cited, either by the BIA or by the government in their briefs, are basically mentions of additional documentation or corroborating documentation throughout the proceedings. Mr. Muhammad was never provided with notice that this was going to be an absolute requirement, otherwise his claim would be denied. And importantly, he did submit corroborating evidence as it is. There were five eyewitnesses that supported his claim for withholding of removal, so he simply was not given notice that there was a requirement for additional corroborating evidence. Finally, on the last point before the court, I think it's an interpretation of the rule. I see my time is out, but I think it's a pretty straightforward issue. I'm happy to answer questions if the court has it, but I'll save my time there otherwise. Very well. Thank you, Mr. Bergman. The court will hear from Ms. Robinson. Thank you, your honors, and good morning. Marie Robinson for the Attorney General. This court should deny the petition for review. As the board noted, petitioner waived any argument that he could not reasonably be expected to relocate and that he qualified for protection under the cap. And those findings are dispositive to his claims. The court does not have jurisdiction to review factual challenges, the final order of removal, and Mr. Muhammad does not raise any colorable constitutional claims or meritorious questions of law. His arguments are simply without merit and not supported by the record. In terms of his relocation argument... Counsel, would you address mostly the waiver issue and the bouncing waivers in this case? And who waived what, when, and where now? Proceed. Of course, your honor. So I would say that Mr. Muhammad failed to exhaust his argument that DHS somehow waived any opposition to his religion claim. And his argument is without merit. His brief to the board is at pages 55 through 69. And he argues based on corroboration, but he does not waive, he does not raise the specific arguments. Furthermore, I would just note that this, the procedural history of this case simply does not support his argument. When he was initially before the immigration judge, as your honors noted, his entire claim was based on his particular social group, which was premised on the music video. Didn't he amend, Counsel, didn't he amend to add religion? I thought he amended his petition to clearly add amended, right? A redlined, actually kind of a redlined application. Go ahead. Yes, your honor. So he did check the box about religion on his form I-589, but he also checked every other box and he did not indicate that he had any particular religious or political affiliation. He also did not offer any testimony specifically on his religion. The other thing I would just note for the court is that after the counsel, I think you're, I think again, you're overstating it because he says terrorists had made it clear. They're going to kill me if I return to Somalia because it's a disgrace to Muslim men. Muslim refers to Islam. So that's a religion. So help me. So your honor, what I would just point to is that his arguments before the board and before the immigration judge were based on being his tribal affiliation and being a musician who produced videos that made him a target. So I'm referring here to his first brief to the board at page 919. Also when the case was remanded, he noted that the board narrowed the scope of the issues presented and said that he sought to further narrow those issues by withdrawing his claim to the particular social group of Somalis in the United States who produce music videos and to proceed solely on his clan based claim. Well, while we're recounting the briefs, as you know, DHS's first brief to the board recognizes that it is based on religion. Your first brief says, I don't know in later briefs you try to say you didn't say that, but I looked at your first brief and your first brief says that we recognize the decision was based on one or all or any, you know the phrase, including the religious aspect of video being unacceptable to Muslim faith. Page 16 of your original brief after the first ILJ's decision. How does that affect your position? So your honor, what I would say is that I think what this also just sort of gets to is the immigration judge's original decision said there could be a religious aspect. After that, all of the arguments that Mr. Muhammad made before the immigration court, the testimony, the evidence that was provided were not based on his religion. Once the board remanded, found the particular social group not legally cognizable and that the immigration judge did not address DHS's rebuttal evidence, Mr. Muhammad narrows the issues to pursue a clan based claim only. There is no testimony, no evidence based on the religion. It was country conditions, an affidavit about his cousin being killed. And then the immigration judge granted explicitly based on religion, at which point DHS appealed and noted that there was no evidence Mr. Muhammad would be targeted based on his religion. And DHS then at that point, once the case was remanded by the board again, filed cases that were similar. And after Mr. Muhammad declined to take additional testimony, the DHS noted that its interest in taking testimony relied on Mr. Muhammad filing additional evidence or testimony in support of his claim and that he did not do so. And then the DHS made closing argument based on no nexus to his religion. So I'm frankly a little bit confused here by what exactly council believes should have occurred because it seems that the board remanded finding that there was insufficient evidence of religion. Mr. Muhammad then did not prove up his own claim. And so the argument appears to be that DHS should have somehow established his claim when his own attorney did not explore this issue and then rebutted the testimony that DHS listed. And I'll  proceedings does not rest with the Department of Homeland Security at rest with the applicant. And so this argument is in essence that he should be granted relief by default. And I think that's simply without merit. Well, is it granted remand by default? You're referring to what relief he was requesting your honor? Well, no, no, I'm just saying you said it was the granted withholding by default. Does he deserve a hearing to see how much corroboration he can really reach really got? No, your honor. Turning to the corroboration issue. I would just say that I don't think the court needs to reach the notice for requirement in this case because Mr. Muhammad was put on notice throughout his proceedings that corroboration could reasonably be required. So as early as November 2017, the what about the rest of the statute? So we focus the argument. What about the rest of the statute which is where they camp about whether you could reasonably obtain the evidence? So the reason that Mr. Muhammad gave for failing to obtain the evidence the court did not find persuasive and I'll just note there were two pieces of evidence here that he did not provide. The first was the video which he allegedly produced himself and the second was objective evidence of the threats that he's purportedly received written and on video. The only reason he gave for not providing the video was that it was taken down. Given that his brother testified he had access to the video when he testified and Mr. Muhammad said the video was posted everywhere. This lack of corroboration was glaring. Mr. Muhammad also said he received written threats on Facebook, but he did not file them and it's pretty clear from the record that Mr. Muhammad's prior attorney was aware that corroboration was an issue. At the September 12th 2019 hearing he said that the board's decision noted there was a lack of corroborating testimony for the threats that he received and counsel said it's not available. We tried. Objective evidence is not required. That's at page 163 of the record and counsel then indicated he did not plan to corroborate the case and he continued to rely on the testimony of Mr. Muhammad and his family members. And I'll just note that the agency was not compelled to accept that testimony as fact as this court is well aware in Dye v. Garland the Supreme Court relied in large part on this court's decision in Doe v. Holder and finding and I'm paraphrasing here, but just because someone subjectively believes something to be the case. It's silly that their opinion as asserted is actually true. And so here Mr. Muhammad was on notice both from the board and also from DHS as they raised this lack of corroboration throughout proceedings and their appeals. Well, when's the first time the board, when is the first time the board talked about or did the board ever talk about the reasonably obtained part of it? The reasonably obtained your honor. Yeah, I believe and you can correct me if I'm wrong. Let me just take a look here. Okay, so I don't want to muddle the agencies here your honor. So I'll just know that the at the merits hearing on November 30th 2017 the agreement forms Mr. Muhammad and his attorney the real ID act applied corroboration would be required. So that was at the apologize. That was at the August 15th 2017 master hearing that he was warned about corroboration. He appeared at the merits hearing and asked actually for a continuance after the immigration judge excluded the pages reflecting the YouTube video because there was no transcript. The continuance is granted. Now I'm going to go to the board decisions. Okay, so the forward first remand was for in light of the DHS rebuttal evidence totality of the circumstances. Is this the 2018 remand council? Is this the 2018 remand you're talking about? Yes, your honor. Okay, proceed. Yes, your honor. Okay. The then the DHS appeals after the immigration judge's second decision on remand did not provide a testimony. We then get to the board's July and petitioner argued that because the IJ found Mr. Muhammad to be credible. He is not explicitly required to provide corroborating information. It's at page 252. And then when I get to the board's July 2nd 2019 decision, the board noted that the asylum application listed religion as a possible ground but in the course of remanded proceedings, he only addressed clan membership and DHS responded. And so the board finally the DHS the agency should have the opportunity to explore the source of the YouTube threats because although he expressed his belief, the threats were made by al-shabaab. He was unable to corroborate his opinion with objective evidence. The case then goes back. Mr. Muhammad. It's attorney concedes at the September 2019 hearing that the board's decision said that and then announces his intention to continue to rely on the testimony. So does that answer your question your honor? Yeah, thank you detail clerks will really appreciate it. Okay. I know this case is very fact-specific. So I'm trying to keep it somewhat simple without but I appreciate the court's time. So finally, if I could just briefly discuss the relocation argument, I'll just note that the this court's opinion and Sharifi bar. I think is very instructive here. The Mr. Muhammad did not exhaust his relocation argument before the board. He did not address the immigration judges specific factual findings and the arguments he is raising now about general violence in Mogadishu were not raised before the board, but also these do not pose any sort of legal error. In essence, this is an argument that the agency did not agree with Mr. Muhammad about the conditions in Mogadishu specifically and Somalia in general. So it's an invitation for this court to second-guess actually the immigration judges fact-finding and does not present a question of law. And so this argument is unexhausted, but it is also without any merit. And so that's dispositive to the asylum upholding claim and then the cat protection claim as the board noted was waived. So I'm just going to wrap up unless anyone has any other questions. But in some we would say Mr. Muhammad is removable for having committed a crime specified in 1252 A2C, which this court narrows its jurisdiction. None of his claims are colorable constitutional claims or meritorious questions of law and many of them are not exhausted before the agency. So this court should deny the petition for review. Thank you. Thank you, Miss Robinson. Mr. Rickman, your rebuttal. Thank you, Your Honors. I'll make a few points. First, I just want to remark on counsel's point that DHS had pressed the issue at the appropriate time with regards to the waiver issue. They had pressed the religion claim or opposed it at the appropriate time. Your Honors, when in the Board of Immigration Appeals' second decision, they remanded the case with the understanding that the language of the remand was that they wanted to allow DHS to explore the source of the threats. That actually didn't happen. There was no additional testimony that was taken, offered, or requested by DHS after that remand. All they did was submit some examples of other immigration cases to the immigration court and they made some arguments to the court, but they didn't do anything to actually explore the source of the threats. There was no additional evidence that was actually offered at that time by DHS. And frankly, the only reason they were able to get a different decision on remand was probably because it was a different immigration judge when they got there. And it wasn't the prior judge who had issued a decision twice agreeing with Mr. Muhammad's assertions. I also want to remark about Council's point that we did not prove the religion claim. That's just not true, Your Honors. There were five eyewitnesses that corroborated the religion based claim and there also was some documentation provided. Granted, it wasn't a significant amount, but it did help to substantiate Mr. Muhammad's assertions that he was not able to provide additional documentation or evidence of the videos that provided the Third, I want to say that the Council's point about how the lack of corroboration was glaring for the threats actually speaks to one of the issues that they didn't respond to in our briefs, namely that under decisions from this court and other federal courts, it's considered unreasonable to require the applicant to provide corroboration of specific threats against his life. The idea being that it's not reasonable to try to get this information, you know, either from the people who are making the threats or to find where the threats were actually met. Well, this is this a little different than that. I mean, the claim is that some of the threats were on a YouTube page created by your client and the other claim is is that they were made on your client's Facebook page and it seems to me that no Facebook page ever dies as and so there should have been at least something there that that could have been produced, right? I mean, this is not a case where I got to go look for the bad guy and threaten me and subpoena them or somehow get him to repeat the threat on a way that's permanently reported. I don't entirely agree, your honor. The threats that were made were online, were taken down by YouTube and by Facebook because they violated the content moderation requirements. And so I don't think it's reasonable to require. Is there some record that you know, when when something's deleted isn't there? In fact, at least a record from which a reasonable inference can be drawn, right? I mean, if a comment's removed, the Facebook administrator says comments removed account suspended, whatever, right? I mean, isn't that true? My time is out. But if I can if I can just answer your question, I don't know if that's true. As a matter of fact, I don't think it's supported by the record. And I think what the record does show is that Mr. Mohammed and his attorney before the immigration court said they tried to recover the threats that were made on Facebook and YouTube and they weren't able to find them. So I think that's the that's the fact that's before. Thank you. Thank you. Thank you, counsel. We appreciate your appearance and arguments today. Case is submitted. We will issue an opinion in due course.